393 A.2d 730

**COMMONWEALTH of Pennsylvania**

v.

**James DOUGHERTY, Appellant.**

Superior Court of Pennsylvania.

Argued April 12, 1978.

Decided Oct. 20, 1978.

Charles F. Gilchrest, Sharon, for appellant.

David B. Douds, Assistant District Attorney, Hermitage, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CER-CONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Criminal Division of Mercer County at No. 146 Criminal 1977. The procedural history and facts relevant to the issues on appeal are as follows:

Appellant was arrested on November 23, 1976 and charged with the offense of driving while under the influence of

intoxicating beverages. The officer testified he was traveling directly behind appellant for 1½ miles on Interstate 79 and observed him run off the right side of the highway three or four feet on three occasions, in addition to crossing the centerline by two feet, all at an approximate speed of 24–28 miles per hour. After the vehicle had been stopped by the officer, appellant handed the officer a card showing membership in the Shenango Valley Chamber of Commerce instead of his license. He then handed his entire wallet to the officer which was refused. The license was then removed by appellant, and in getting out of the car, several cards and keys spilled onto the ground. The officer testified that appellant was weaving back and forth and bracing himself with his hands on the roadway as he picked up the cards. When he was given performance tests, appellant was unable to stand on one foot with his eyes closed, and could not touch the tip of his nose with his eyes shut. The officer noticed a staggering gait as appellant walked to the police car. Once in the car, appellant refused to submit to a chemical test of his breath. At the police station, appellant again refused the breathalyzer test. The officer testified that during the time appellant was at the police station waiting for a taxi, he had a staggering gait. He did not have a slurred speech and the officer didn't notice whether appellant's eyes were red or bloodshot. The officer informed appellant that he could wait in the front section of the building, but instead he staggered into another office, at which time he was told he was in the wrong area and to go and sit in the lobby area.

Appellant testified that he was an attorney for Allegheny Ludlum Industries. He stated that he had three drinks of vodka and water the afternoon of this occurrence between 1:00 P.M. and 2:30 P.M. as he packed his clothes in his hotel room in Pittsburgh for the trip home. He left Pittsburgh at approximately 5:45 P.M. He further testified that he did go off the road several times and missed the proper exit because he was attempting to unlock his briefcase, prop up the lid, open a box of cigars therein, and then unwrap and light one of the cigars.

Appellant objected to two sections of the Judges' charge specifically. The jury was instructed that people pass alcohol out of their systems and that one test the jury may use in determining when consumption occurred is whether the person stays the same, improves, or gets worse during the time he is under police observation.

The jury was further instructed as to credibility as follows:

"Now, to say that the defendant would not be interested in the outcome of the case would be to attack your intelligence, of course, he is interested. I'm certain that the police officer is interested also. You look to see whether or not their interest in any way colored their testimony; and in judging that you judge their demeanor. Is this police officer, Trooper Given, the type of a police officer that is attempting to get a prosecution just for the sake of winning a case? Is he saying things untrue because he wants to win? What difference does it make to him, to his superiors, or his fellow officers, remuneration, or whatever it may be."

Appellant was found guilty by the jury, and filed timely post trial motions. The appeal followed.

■ Appellant first argues that the trial court erred in permitting the introduction of evidence of his refusal to submit to a breathalyzer test as substantive evidence of his guilt of driving while intoxicated. The trial court admitted this evidence pursuant to 75 P.S. 624.1(h) the "implied consent" section of the Motor Vehicle Code which clearly states that such evidence is admissible. The constitutionality of this provision has been upheld by this court and further discussion in unnecessary. *Commonwealth v. Robinson*, 229 Pa.Super. 131, 324 A.2d 441 (1974). We hold therefore, that the oral refusal to take the breathalyzer was non testimonial in nature and therefore not a violation of appellant's privilege against self incrimination.

Appellant next argues that the jury instruction that people pass alcohol out of their systems was improper where there was no evidence on the record as to that issue, and the

court could not take judicial notice thereof. A review of the record shows that the officer testified that appellant's condition remained the same during the time he was in custody. Further, the trial court mentioned appellant's testimony as to having had three drinks sometime between approximately 1:00 and 2:30 P.M. and that he returned to work, thereafter, only to leave Pittsburgh for home in Mercer County at approximately 5:45 P.M. Therefore, the time of consumption was an issue to be determined by the jury in determining guilt or innocence.

The trial court did not mention any particular rate that alcohol passes through the system, but rather merely stated an obvious and well known fact. Otherwise, anyone who became intoxicated would forever remain in that condition. Since the fact that people pass alcohol out of their bodies is a matter of common and general knowledge, it was proper for the trial court to take judicial notice of it in the charge to the jury. *Commonwealth v. Milligan*, 172 Pa.Super. 607, 94 A.2d 64 (1953); *Commonwealth v. Harris*, 351 Pa. 325, 41 A.2d 688 (1945); *Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973).

Appellant further contends that the trial courts charge on credibility unduly attracted the jury's attention to the Commonwealth's testimony, and amounted to an argument by the court that the police officer had no reason not to tell the truth. However, the entire charge must be read as a whole to determine whether it was fair and impartial. *Commonwealth v. Davenport*, 462 Pa. 543, 342 A.2d 67 (1975); *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975). The trial judge is free to express his opinion on some of the evidence as long as the jury is left free to act upon its own view of the evidence. *Commonwealth v. Ott*, 417 Pa. 269, 207 A.2d 874 (1965); *Commonwealth v. Fiorini*, 202 Pa.Super. 88, 195 A.2d 119 (1963).

Reading the charge as a whole indicates that the trial judge properly reviewed the evidence, and we find nothing argumentative or prejudicial in the charge.

Accordingly, the Judgment of Sentence is affirmed.

SPAETH, J., files a dissenting opinion.

HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

I believe we should vacate the judgment of sentence and remand for a new trial.

In charging the jury, the trial judge stated: "Credibility is the thing that the jury is best at and the reason that the system works so well. Credibility is who you believe or what portion of what you hear you believe. In determining credibility, you can consider the apparent candor and frankness or fairness of the witnesses or lack of it; their bias or prejudice in the case, if any; the means that they have of observing what they say they saw; their corroboration, if any, by other witnesses. You take into account all of the surrounding circumstances and determine which witness or witnesses you wish to believe. Now, to say that the defendant would not be interested in the outcome of this case would be to attack your intelligence, of course, he is interested. I'm certain that the police officer is interested also. You look to see whether or not the interest in any way colored their testimony; and in judging that, you judge their demeanor. *Is this police officer, Trooper Gwin, the type of a police officer that is attempting to get a prosecution just for the sake of winning the case? Is he saying things untrue because he wants to win? What difference does it make to him; to his superiors, or his fellow officers, remuneration, or whatever it may be?* You judge the character or the people who come before you in determining truthfulness. I'm certain that there are certain people that you know that could tell you anything and you would disbelieve it simply because you don't feel that man has a character of honesty. There are other people who will say things to you and you will be much more prone to accept what they say because of their demeanor and the way they tell you what they are saying. In the last analysis, however, you use your own good common sense and judgment." (Emphasis added.)

Section 4.7 of the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (Approved Draft, 1968) provides:

"(a) The court, at the time it instructs the jury, may summarize and comment on the evidence, provided the jury is clearly and unequivocally instructed that it is the exclusive judge of the facts, that it is to determine the weight of the evidence and the credibility of witnesses, and that it is not bound by the comments of the court.

"(b) The summary and comment permitted in subsection (a) is governed by the following principles: . . .

"(iv) The court may state the law and comment on matters in evidence bearing on the credibility of any witness, *but may not directly express an opinion that certain testimony is worthy or unworthy of belief.*" (Emphasis added.) The Commentary to § 4.7(b)(iv) states: "The standard permits the judge to put to the jury appropriate legal principles on credibility and to point out relevant matters in evidence, such as conflicts in testimony of a witness or between testimony of witnesses. But, the judge may not 'intimate that certain testimony is worthy or unworthy of belief.' *United States v. Bookie,* 229 F.2d 130 (7th Cir. 1956)."

The trial judge's rhetorical questions concerning the credibility of the arresting officer violated this standard. The effect of these questions was twofold. First, the questions dealt exclusively with the officer's credibility, and thereby focused the attention of the jury on the officer's version of the case. Second the suggested answers to the questions so plainly emphasized the officer's apparent objectivity that it seems quite certain that the jury understood from them that in the trial judge's opinion, the officer's testimony was particularly worthy of belief. Since the officer's credibility was critical, the questions represented reversible error. *Commonwealth v. Wortham,* 471 Pa. 243, 369 A.2d 1287 (1977).

The judgment of sentence should be vacated and the case remanded for new trial.